Michael D. Warner, Esq. (TX Bar No. 00792304)
Rachel Obaldo, Esq. (TX Bar No. 24041617)
Cole, Schotz, Meisel, Forman & Leonard, P.A.
301 Commerce Street, Suite 1700
Fort Worth, Texas 76102
817-810-5250
817-810-5255 Facsimile
Email: mwarner@coleschotz.com
Email: robaldo@coleschotz.com

COUNSEL TO DEBTORS,
MCGINNIS LAND PARTNERS I, LP
AND CANYON FALLS LAND PARTNERS, LP

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| McGinnis Land Partners I, LP. and Canyon Falls Land Partners, LP | Case No. 10-BK-24654-SGJ Case No. 10-BK-24655-SGJ |
| Debtors. | |

**MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO GRANT AN
EASEMENT TO THE TRINITY RIVER AUTHORITY FREE AND CLEAR OF LIENS
AND OTHER INTERESTS**

McGinnis Land Partners I, LP and Canyon Falls Land Partners, LP, the debtors and

debtors in possession in the above-captioned cases ("McGinnis", "Canyon Falls" and

collectively, the "Debtors"), by and through their undersigned counsel, hereby submit this

motion (the "Motion"), pursuant to sections 105(a) and 363 of title 11 of the United States Code,

11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 6006, 9008 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an Order authorizing the

Debtors to grant the Trinity River Authority ("TRA") an easement free and clear of liens,

encumbrances and other interests.  In support of this Motion, the Debtors respectfully represent as follows:

## I.
## JURISDICTION

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b).  This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6006, 9008 and 9014.

## II.
## BACKGROUND

**A.      Introduction**

4.      On July 2, 2010 (the "Petition Date"), both of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the Bankruptcy Code.

5.      The Debtors continue in possession of their properties and continue to operate and manage their business as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No request has been made for the appointment of a trustee or examiner, and a Committee of Creditors has not been appointed.

**B.      Factual Background**

7.      The Debtors are each limited partnerships formed under the laws of the State of Texas on March 20, 2005.  Canyon Falls GP, LLC is the General Partner of both McGinnis and Canyon Falls.  HCREA Canyon Falls, L.P. is the Class A Limited Partner of each of the Debtors with a 50% partnership interest in each Debtor.  SSM Investors, L.P. ("SSM") is the

Class B Limited Partner of each of the Debtors with a 49.9% partnership interest in each Debtor. II Stephens/Canyon Falls, LLC is the Class C Limited Partner of Canyon Falls with a .1% partnership interest. II Stephens/Falls Construction, LLC is the Class C Limited Partner of McGinnis with a .1% partnership interest.

8.     Originally, the Debtors owned two contiguous tracts of vacant land consisting collectively of approximately 1,245 acres in Denton County, Texas in the Towns of Flower Mound, Northlake and Argyle (the "Property"). The Property is planned to be developed for both residential and commercial use and is more commonly known in the real estate development community as the "The Canyon Falls Development."

9.     The Canyon Falls Development is a master planned community that has frontage along I-35W, Hwy 1171, Hwy 377 and access to FM 407. There are approximately 1,941 single family residences planned with an additional 100 acres of mixed use property that allows for a variety of commercial, retail, office and other uses. The Canyon Falls Development is divided by a 135 acre green belt that is a section of the Graham Branch Tributary located at the northern edge of Lake Grapevine. The green belt will be the centralized amenity of the development with miles of hiking and biking trails, multiple lakes and parks.

10.     The architecture within The Canyon Falls Development will consist of a french country combined with an old european design. Hardscape construction will implement a wide variety of natural stones and rock formations. The main entry located at the southern end of The Canyon Falls Development at Hwy 1171 will include a $1,200,000 entry feature. The entry feature will include a large waterfall that feeds a small lake and a stream bed that will continue under the main parkway and terminate down in the green belt. The main parkway will continue along the green belt through large groves of oak trees that leads to the 23 lot model

home park that sits above a large lake with two 25 foot fountains.  The model home park is located directly across the street from a 10 acre amenity center that will include two large pools, a club house, playground and athletic courts.  Throughout the entire Canyon Falls Development will be miles of hiking and biking trails that will give pedestrian access back to the amenity center and throughout the 135 acre green belt.

11.    The Debtors' acquisition and initial development of the Property was financed through two separate loans with American Bank of Texas, secured by the Property.  On June 16, 2010, American Bank of Texas sold, for the full face amount, and assigned all of its rights, title and interest in the two loans to SLF IV/Hanover Canyon Falls, L.P., (the "<u>Secured Lender</u>")[1].  The Secured Lender holds liens against the Property securing an aggregate debt obligation of approximately $19.38 Million (the "<u>Secured Lender Debt</u>")[2].  As of the Petition Date, the Secured Lender Debt was all due and payable.

12.    On September 29, 2010, the Debtors intend to commence monthly interest payments to the Secured Lender, in the approximate amount of $62,757 (on the Canyon Falls obligation) and $5,189 (on the McGinnis obligation), for an aggregate of $67,946.  As noted below (Section II.D.), the Debtors are concurrently filing a motion to borrow funds, on an unsecured basis, to fund the monthly interest payments to the Secured Lender, as well as having available funding for administrative obligations.  The proposed borrowing, in the amount of

---

[1]    The Debtors understand and believe that SLF IV/Hanover Canyon Falls, L.P., acquired the interests of American Bank of Texas on June 16, 2010 (just 16 days prior to the Petition Date) by paying to American Bank of Texas, the full par amount, plus accrued and unpaid interest due and owing by the Debtors on the underlying notes, secured by the Property.

[2]    Nothing herein should be deemed or constructed to be the Debtors' acknowledgement that the alleged liens of the Secured Lender against the Property are valid and/or properly perfected.  The Debtors take no position herein with respect to such issues.  The question of the validity and extent of the alleged liens are the subject of an on going investigation by the Debtors and their counsel.

$360,000, is sufficient to cover interest payments to the Secured Lender, through December 31, 2010.

13.     Further, the Debtors anticipate the closing of the TxDOT Transaction and the Denton Easement Transaction (each as defined and addressed below – Sections II.F. and II.E., respectively), in the next 45 days, and from which the net proceeds thereof will be paid to the Secured Lender, and applied against the Secured Lender Debt.

14.     In July 2009, the Debtors obtained a collective appraisal of their entire property owned at the time, which resulted in an estimated value of $33.64 Million.  As noted below (Section II.C.), since the July 2009 appraisal, the Debtors have sold a portion of their land. Also as noted below (Section II.D), the Debtors have commissioned a new appraisal of the Property, and expect to have the same in September 2010.

**C.     Prepetition Sale Transactions**

15.     Prior to the Petition Date, the Debtors sold to Argyle Independent School District ("AISD") a certain parcel of land containing approximately 108 acres (the "AISD Sold Property") for $8,124,675 (the "AISD Purchase Price").  $6,153,538.99 of the AISD Purchase Price (the "AISD Escrowed Funds") was established to fund an escrow with American Bank of Texas (the "Escrow Agent") pursuant to an Improvement and Escrow Agreement dated November 17, 2009, among Canyon Falls, AISD and the Escrow Agent (the "Escrow Agreement").

16.     Also prior to the Petition Date, the Debtors sold a portion of the Property to Denton County, Texas ("Denton") containing approximately 5 acres (the "Denton Sold Property," which together with the AISD Sold Property are collectively referred to as the "Sold Property").  Denton funded an escrow in the amount of $490,699 (the "Denton Escrowed

Funds," which together with the AISD Escrowed Funds are collectively referred to as the "Escrowed Funds") with the Escrow Agent pursuant to an Improvement and Escrow Agreement dated March 25, 2010 among Canyon Falls, Denton and the Escrow Agent (the "Denton Escrow Agreement," which together with the AISD Escrow Agreement are collectively referred to as the "Escrow Agreements").

17.     Pursuant to the Escrow Agreements, Canyon Falls agreed to make certain improvements to the Sold Property as identified in the Escrow Agreements using the Escrowed Funds in accordance with an agreed-upon budget (the "Budget"). The Budget is the maximum amount of money Canyon Falls is obligated to spend on the improvements and Canyon Falls is entitled to receive any remaining AISD Escrowed Funds after all improvements are made. The Debtors are hopeful that the costs and expenses relating to the improvements will be less than the AISD Escrowed Funds and thus the Debtors will receive the net remaining funds. While clearly not a certainty, the Debtors estimate that such amount could exceed $250,000, which amount is free and clear (not subject to the liens of the Secured Lender). Denton is entitled to receive any funds remaining from the Denton Escrowed Funds after all improvements are made.

18.     Canyon Falls contracted with SSM[3] to supervise and manage the planning, design and construction of the improvements[4]. More specifically, the engineering plans and specifications for the improvements have been completed (the "Improvement Plans").

19.     SSM and the Debtors circulated the Improvement Plans to various contractors, and established a bid deadline of August 16, 2010. The bids sought in connection with the

---

[3]     SSM is the Class B Limited Partner of each of the Debtors.

[4]     The agreements by and between Canyon Falls and SSM are executory contracts. This Motion addresses executory contracts in Section IV.C., below.

Improvement Plans include seeking contractors for: (i) excavation, (ii) sanitary sewer lines, (iii) water lines, (iv) drainage lines, (v) paving of roads and easements, (vi) erosion control, and (vii) landscaping.

20.     SSM and the Debtors' project engineer have and continue to reviewed approximately 13 separate bids received in connection with the Improvement Plans, and anticipate awarding, in the next 30 days, subject to Bankruptcy Court approval, various contracts to implement the Improvement Plans.

21.     The Debtors anticipate construction pursuant to the Improvement Plans to commence early October 2010, and have an expected completion date of June 2011.


**D.     Existing Orders of the Court and Other Relief Requested**

22.     Filed concurrently herewith is the Debtors' Application to employ John Blackburn and Lane Bennett Partners, as Real Estate Broker to assist the Debtors in marketing the Property (the "Real Estate Broker").  The procedures, timelines and structures proposed in this Motion have been discussed with and are supported by the Real Estate Broker as being reasonable and designed to be in the best interests of the Debtors' estates' and their stakeholders.

23.     Filed concurrently herewith is the Debtors' Application to employ Steve Kaplan and Steve Kaplan, PC, as the Debtors' special real estate counsel, to assist in, *inter alia*, the transactions addressed in this Motion (the "Real Estate Counsel").

24.     On August 4, 2010, the Court entered its Order Approving and Authorizing the Debtors' employment of Cole, Schotz, Meisel, Forman & Leonard, P.A., as counsel to the Debtors (the "Bankruptcy Counsel").

25.     On August 13, 2010, the Court entered its Order Approving and Authorizing the Debtors' employment of the Butler Berger Group, as Real Estate Appraiser for the Debtors (the "Real Estate Appraiser").

26.     In connection with the Debtors' proposed marketing of the Remaining Property (as defined and addressed below – Section II.F.) and the sale procedures, timelines, and structures, all as more fully discussed below, the Debtors have consulted with and utilized the advice and guidance, of the Real Estate Broker, the Real Estate Appraiser, the Bankruptcy Counsel, and the Real Estate Counsel (collectively, the "Debtors' Professionals").

27.     Also filed concurrently herewith is the Debtors' Motion to borrow, on an unsecured basis, funds to cover, *inter alia*, interest payments to the Secured Lender, and administrative obligations.  The proposed borrowing, in the amount of $360,000, is sufficient to cover interest payments to the Secured Lender, through December 31, 2010, plus anticipated administrative obligations.


**E.     The Easement**

28.     The Property boasts a 135 acre flood plain along the Graham Branch Creek (the "Creek") that acts as the major watershed for Denton County.  The master plan for the Property contemplates that sewer services will be provided by TRA.  Specifically, the sewer line will be located along the Creek and run directly through the middle of the Property.  The sewer line will service the entire Property, as well as the surrounding region.  The Debtors' engineers have worked closely with the TRA on the alignments of the sewer system and the flow calculations to ensure that there would be no damage to the Property in connection with the construction and operation of the sewerage system.

29.     To facilitate the installation and maintenance of the sewerage system, the Debtors have agreed to grant TRA a permanent utility and access easement and a temporary construction easement (collectively, the "Easement").  The Easement will provide TRA with the appropriate access needed to the Property for the purposes of installing, constructing, repairing, maintaining, altering, replacing, relocating, rebuilding, removing, and operating TRA's sanitary sewer facilities.  Copies of the Easement and related ancillary documents are attached hereto as Exhibit A.  Absent granting TRA the Easement the Property would lack the necessary sewer and related systems, and would seriously affect the value of the Property and its future development.

30.     As consideration for the Easement, the TRA has agreed to pay $306,000 to the Debtors (the "Denton Easement Transaction").  The Debtors believe the purchase price is fair and reasonable and was negotiated after significant arms length discussions with TRA.

31.     The Debtors anticipate that the closing of the sale of the Easement could occur within 45 days hereof.  The Debtors propose that the net proceeds to be received from the sale of the Easement will be paid to the Secured Lender, concurrent with the closing of such transaction.

**F.      Pending Post-Petition Sale Transactions**

32.     The Debtors anticipate filing in the very near future a Motion to sell approximately 2.3 acres of the Property to the Texas Department of Transportation ("TxDOT") (the "TxDOT Transaction").  The acreage proposed to be sold to TxDOT is for right of ways to augment roadways in, around and contiguous to the Property.  The Debtors anticipate that the closing of the TxDOT Transaction could occur within 45 days hereof.

33.     In connection with the TxDOT Transaction and the Denton Easement Transaction, the Debtors propose that the net proceeds to be received by the Debtors will be paid to the Secured Lender, concurrent with the closing of such transaction.

### G.     Proposed Sale of Remaining Property

34.     The Debtors have determined that a sale of the Property, less (i) the Sold Property (as addressed in Section II.C.), (ii) the acreage in connection with the TxDOT Transaction, and (iii) the easement to be granted pursuant to the Denton Easement Transaction (hereinafter, the "Remaining Property") is in the bests interests of the Debtors and their stakeholders.  The Debtors' believe that a significant amount of equity, over and above the amount of the Secured Lender Debt, exists in the Remaining Property.  Such equity is best maximized, preserved and realized by a sale of the Remaining Property, as shown in the Debtors' motion to sell all Remaining Property filed concurrently herewith.

### III.
### GROUNDS FOR APPROVAL OF THE MOTION

### A.     Section 363(b) of the Bankruptcy Code Authorizes the Sale of the Easement Under the Circumstances Present Here

35.     Pursuant to Section 363 of the Bankruptcy Code, a debtor in possession may sell property of its estate outside of the ordinary course of its business, subject to the approval of the court after notice and a hearing.  See, 11 U.S.C. § 363(b)(1).  In the Fifth Circuit and elsewhere, it is well settled that a decision to sell assets outside the ordinary course of business, prior to confirmation of a plan, be based upon the sound business judgment of the debtor.  See, e.g., In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986); In re Terrace Gardens Park

*Partnership*, 96 B.R. 707, 713-714 (Bankr. W.D. Tex. 1989); <u>In re Martin</u>, 91 F.3d 389 (3d Cir. 1996), citing, <u>In re Schipper</u>, 933 F.2d 513 (7th Cir. 1991); <u>Stephens Indus., Inc. v. McClung</u>, 789 F.2d 386 (6th Cir. 1986); <u>In re Lionel Corp.</u>, 722 F.2d 1063 (2d Cir. 1983); <u>Licensing By Paolo, Inc. v. Sinatra (In re Gucci)</u>, 126 F.3d 380, 387 (2d Cir. 1997) ("A sale of a substantial part of a Chapter 11 estate may be conducted if a good business reason exists to support it."); <u>Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 722 F.2d 1063, 1071 (2d Cir. 1983); <u>In re Chateaugay Corp.</u>, 973 F.2d 141, 143 (2d Cir. 1992); <u>Stephens Indus. v. McClung</u>, 789 F.2d 386, 390 (6th Cir. 1986) ("bankruptcy court can authorize a sale of all a Chapter 11 Debtor's assets under [section] 363(b)(1) when a sound business purpose dictates such action."); <u>Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)</u>, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the Debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the Debtor's conduct.").

36.     Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard:

  (a)     whether a sound business justification exists for the sale;

  (b)     whether adequate and reasonable notice of the sale was given to interested parties;

  (c)     whether the sale will produce a fair and reasonable price for the property; and

  (d)     whether the parties have acted in good faith.

<u>See</u>, <u>e.g.</u>, <u>In re Weatherly Frozen Food Group</u>, Inc., 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. 169, 176 (D. Del. 1991); <u>In re Condere</u>, 228 B.R. 615, 626 (S.D. Miss. 1998).

37.     Consideration of these factors here establishes that the granting should be approved.  The Debtors believe it is a sound exercise of their business judgment to grant the Easement.  As set forth above, the Easement will be used to construct a sewer system that will provide sewer services to the Property, further enhancing its value.  Moreover, the Debtors and TRA negotiated the Agreement at arms'-length and in good faith.  The purchase price represents fair value for the Easement as it is based on the appraised value of the land.  Lastly, the Debtors have fully disclosed and requested the Court's approval of the Agreements and intend to provide adequate notice of the sale to parties-in-interest as discussed below.

**B.      Sale of the Easement Should be Free and Clear of Liens**

38.     Pursuant to Section 363(f) of the Bankruptcy Code, a debtor in possession may sell property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

(a)      applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

(b)      such entity consents;

(c)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d)      such interest is in bona fide dispute; or

(e)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

39.     As provided above, all liens senior to the Secured Lender will be paid first and the balance of the net proceeds will be paid to the Secured Lender.  Accordingly, the Debtors submit that the sale of the Easement free and clear of liens, claims and encumbrances satisfies the statutory prerequisites of Section 363(f) of the Bankruptcy Code.

## IV.
## REQUEST FOR WAIVER OF STAY

40.     In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the Order approving the relief requested in this Motion.   Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."  For the reasons, described above, the Debtors submit that ample cause exists to justify a waiver of the 10-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d), to the extent that they apply.

## V.
## NOTICE

41.     Notice of this Motion has been provided to:  (i) the Office of the United States Trustee for the Northern District of Texas; (ii) counsel to the Secured Lender; (iii) Denton; (iv) all parties entitled to receive notices in these chapter 11 case pursuant to Bankruptcy Rule 2002; and (iv) various federal and state taxing authorities, including the Internal Revenue Service;.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

42.     No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Debtors respectfully requests that the Court grant such other and further relief to the Debtors as the Court may deem proper.

Dated:  August 27, 2010

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: /s/ Michael D. Warner
Michael D. Warner (TX Bar No. 792304)
Rachel Obaldo (TX Bar No. 24041617)
301 Commerce Street, Suite 1700
Fort Worth, TX 76102
(817) 810-5250
(817) 810-5255 (Fax)

Counsel for the Debtors
and Debtors in Possession

# **EXHIBIT A**

MEMORANDUM OF AGREEMENT


**McGinnis Land Partners I, LP,** referred to in this Memorandum as "GRANTOR", agrees to grant Trinity River Authority of Texas, "GRANTEE", a Permanent Sanitary Sewer Easement and a Temporary Construction Easement on Grantor's property located in Denton County, Texas. This property more particularly described in the attached Exhibits "A" and Exhibits "B" to this Memorandum.

IT IS AGREED that the consideration for the execution of the Permanent Utility Easement and a Temporary Construction Easement is $6,107.00.

IT IS AGREED that the GRANTEE will return the temporary construction area to as good as or better condition than that prior to construction.


SIGNED between the parties on this the _____ day of _____, 2010.


GRANTOR: McGinnis Land Partners I, LP


_____

By:

Title:




GRANTEE:   Trinity River Authority of Texas

_____

By:

Title:

## MEMORANDUM OF AGREEMENT

**Canyon Falls Land Partners, LP,** referred to in this Memorandum as "GRANTOR", agrees to grant Trinity River Authority of Texas, "GRANTEE", Permanent Sanitary Sewer Easements, Temporary Construction Easements, Permanent Access Easements and Warranty Deeds for (4) Meter Station Sites on Grantor's property located in Denton County, Texas. This property more particularly described in the attached Exhibits "A" and Exhibits "B" to this Memorandum.

IT IS AGREED that the consideration for the execution of the Easements and Deeds is $299,893.00.

IT IS AGREED that the GRANTEE will return the temporary construction area to as good as or better condition than that prior to construction.

SIGNED between the parties on this the _____ day of _____, 2010.

GRANTOR:  Canyon Falls Land Partners, LP

_____
By:

Title:

_____
By:

Title:

GRANTEE:   Trinity River Authority of Texas

_____
By:

Title:

## TRINITY RIVER AUTHORITY OF TEXAS
## PERMANENT ACCESS EASEMENT

THE STATE OF TEXAS      § 
                            §      KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF DENTON      §

That, **CANYON FALLS LAND PARTNERS, LP,** GRANTOR herein, for and in consideration of TEN DOLLARS and other good and valuable consideration in hand paid by the **TRINITY RIVER AUTHORITY OF TEXAS,** a conservation and reclamation district created by and functioning under Chapter 518, Acts of the 54th Legislature of the State of Texas, Regular Session, 1955, as amended, pursuant to Article XVI, Section 59 of the Texas Constitution, with its principal office at 5300 South Collins Street, Arlington, Tarrant County, Texas 76018, GRANTEE herein, the receipt and sufficiency of which is hereby acknowledged and confessed, does hereby grant, bargain and convey unto GRANTEE, its successors and assigns, a permanent and perpetual access easement for the purpose of installing, constructing, repairing, maintaining, altering, replacing, relocating, rebuilding, removing, and operating GRANTEE's sanitary sewer facilities, and all appurtenances thereto, in, into, upon, over, across and under those lands in Denton County, Texas as described in Exhibit "A" attached hereto and made a part hereof, together with the right of ingress and egress as necessary for such purposes.

GRANTOR covenants and agrees that GRANTEE shall have 1) the right to excavate and fill and to control the excavation and fill upon said permanent easement and to remove from said permanent easement any fences, buildings or other obstructions as may now be found upon said permanent easement together with the right of ingress and egress; 2) the right to prevent possible interference with GRANTEE'S use of the access easement; and 3) the right to prevent the construction within the easement of any building, structure or other obstruction, including the planting of trees, which may endanger or interfere with the efficiency, safety and convenient use of said access easement.

The permanent easement herein dedicated shall run with the land and forever be a right in and to the land belonging to said GRANTOR, its successors and assigns.

An Addendum is attached hereto and incorporated herein by reference. In the event of a conflict between the Addendum and this Easement, the provisions of the Addendum shall control.

TO HAVE AND TO HOLD the above described permanent easement, with the right of ingress and egress thereto, together with all and singular, the rights and appurtenances thereto, in anyway belonging unto the said GRANTEE, and GRANTEE'S successors and assigns forever; and GRANTOR does hereby bind itself, its heirs, successors and assigns, to warrant and to forever defend all and singular the premises unto the GRANTEE, its successors and assigns, against every person whomsoever lawfully claiming or to claim same or any part thereof.

**WITNESS MY HAND**, this the_____ day of _____, 2010.

**GRANTOR:  CANYON FALLS LAND PARTNERS, LP**


By:_____

Name:_____

Title:_____




**GRANTEE:   TRINITY RIVER AUTHORITY OF TEXAS**


_____
Danny F. Vance, General Manager

**ACKNOWLEDGMENT**

STATE OF TEXAS                                    §

COUNTY OF _____                           §


BEFORE ME, the undersigned authority on this day personally appeared_____, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that the same was executed for the purposes and consideration therein expressed, and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 2010.


_____
Notary Public in and for the
State of Texas

(Seal)



**ACKNOWLEDGMENT**

STATE OF TEXAS                                    §

COUNTY OF TARRANT                                 §


BEFORE ME, the undersigned authority on this day personally appeared_____, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that the same was executed for the purposes and consideration therein expressed, and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 2010.


_____
Notary Public in and for the
State of Texas

(Seal)

**ADDENDUM**

1)      At such time as GRANTEE may access its meter station to be constructed on GRANTOR'S property by public right-of-way that abuts the meter station site, GRANTEE will abandon this Permanent Access Easement.  GRANTEE will not unreasonably withhold permission or approvals needed in order to plat over this Permanent Access Easement, provided such plat creates and dedicates a public right-of-way abutting GRANTEE'S meter station site, which will substitute for the access created by this Easement.

## TRINITY RIVER AUTHORITY OF TEXAS
## PERMANENT UTILITY AND
## TEMPORARY CONSTRUCTION EASEMENT

THE STATE OF TEXAS            §
                             §      KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF DENTON             §

That, **CANYON FALLS LAND PARTNERS, LP**, GRANTOR herein, for and in consideration of TEN DOLLARS and other good and valuable consideration in hand paid by the **TRINITY RIVER AUTHORITY OF TEXAS,** a conservation and reclamation district created by and functioning under Chapter 518, Acts of the 54th Legislature of the State of Texas, Regular Session, 1955, as amended, pursuant to Article XVI, Section 59 of the Texas Constitution, with its principal office at 5300 South Collins Street, Arlington, Tarrant County, Texas 76018, GRANTEE herein, the receipt and sufficiency of which is hereby acknowledged and confessed, does hereby assign and convey to GRANTEE a permanent and perpetual sanitary sewer easement for the purpose of installing, constructing, repairing, maintaining, altering, replacing, relocating, rebuilding, removing, and operating sanitary sewer facilities, and all necessary appurtenances including erosion control thereto, in, into, upon, over, across and under those lands in Denton County, Texas, described in Exhibit "A" attached hereto and made a part hereof, together with the right of ingress and egress as necessary for such purposes.

**And in addition thereto**, a temporary construction easement is hereby granted as described in Exhibit "B" attached hereto and made a part hereof, over and across the lands of GRANTOR, lying and being situated in Denton County, Texas, for the purpose of initially constructing such sanitary sewer line.  The construction easement thus granted shall terminate at such time as the initial construction of such sanitary sewer line is completed and the work is accepted by GRANTEE.

GRANTOR covenants and agrees that GRANTEE shall have 1) the right to excavate and fill and to control the excavation and fill upon said permanent easement and to remove from said permanent easements any fences, buildings or other obstructions as may now be found upon said permanent easements together with the right of ingress and egress over GRANTOR'S adjacent lands to or from public right-of-way for the purpose of constructing, improving, reconstructing, repairing, inspecting, maintaining and removing said sanitary sewer facilities and appurtenances; 2) the right to prevent possible interference with the operation of said sanitary sewer system and to remove possible hazards thereto; and 3) the right to prevent the construction within the easements of any building, utilities, structure or other obstruction, including the planting of trees, which may endanger or interfere with the efficiency, safety and convenient operation of said sanitary sewer system and its appurtenances.

The permanent easement herein dedicated shall run with the land and forever be a right in and to the land belonging to said GRANTOR, its successors and assigns.

TO HAVE AND TO HOLD the above-described permanent easement, with the right of ingress and egress thereto, together with all and singular, the rights and appurtenances thereto, in anyway belonging unto the said GRANTEE, and GRANTEE'S successors and assigns forever; and GRANTOR does hereby bind itself, its heirs, successors and assigns, to warrant and to forever defend all and singular the premises unto the GRANTEE, its successors and assigns, against every person whomsoever lawfully claiming or to claim same or any part thereof.

**WITNESS MY HAND** this the\_\_\_\_\_ day of _____, 2010.

_____

## ACKNOWLEDGMENT

STATE OF TEXAS                    §

COUNTY OF DENTON          §

BEFORE ME, the undersigned authority on this day personally appeared _____ known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that the same was executed for the purposes and consideration therein expressed, and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 2010.

_____
Notary Public in and for the
State of Texas

**TRINITY RIVER AUTHORITY OF TEXAS**
**GENERAL WARRANTY DEED**

**Date:**

**Grantor:**     CANYON FALLS LAND PARTNERS, LP, A TEXAS LIMITED PARTNERSHIP


**Grantor's Mailing Address (including county):**

> 4500 Sterling Lane
> Plano, Dallas County, TX 75093

**Grantee:**     Trinity River Authority of Texas, a conservation and reclamation district created by and functioning under Chapter 518, Acts of the 54th Legislature of the State of Texas, Regular Session, 1955, as amended pursuant to Article XVI, Section 59 of the Texas Constitution

**Grantee's Mailing Address (including county):**

> 5300 South Collins Street
> Arlington, Tarrant County, Texas 76018

**Consideration:**

> Ten and No/100 Dollars ($10.00) and other good and valuable consideration.

**Fee Simple Property (including any improvements):**  situated in the W. Love Survey, Abstract No. 728, Denton County, Texas, and being a portion of a 1,116.143 acre tract of land deeded to Canyon Falls Land Parnters, LP as recorded in Document No. 2006-35531 of the Deed Records of Denton County, Texas (D.R.T.C.T.), said 400 square foot parcel being more particularly described in Exhibit "A," attached hereto and made a part hereof.

**Reservations from and Exceptions to Conveyance and Warranty:**

All presently recorded easements, restrictions, reservations, covenants, conditions, mineral severances and other instruments, other than liens and conveyances that affect the property.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in anywise belonging, to have and hold it to Grantee, Grantee's successors or assigns forever.   Grantor binds Grantor and Grantor's

successors and assigns to warrant and forever defend all and singular the property to Grantee and Grantee's successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.

**EXECUTED** this _____ day of _____, 2010.

CANYON FALLS LAND PARTNERS, LP, A TEXAS LIMITED PARTNERSHIP

By: _____

By: _____

**ACKNOWLEDGEMENT**

THE STATE OF TEXAS                              §

COUNTY OF _____            §

Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and consideration therein expressed, in the capacity therein stated and as the act and deed of _____.

Given under my hand and seal of office this _____ day of _____, 2010.

_____
Notary Public, State of Texas