Michael D. Warner, Esq. (TX Bar No. 792304)
Rachel R. Obaldo, Esq. (TX Bar No. 24041617)
Cole, Schotz, Meisel, Forman & Leonard, P.A.
301 Commerce Street, Suite 1700
Fort Worth, Texas 76102
817-810-5250
817-810-5255 Facsimile
Email: mwarner@coleschotz.com
Email: robaldo@coleschotz.com

COUNSEL TO DEBTORS,
MCGINNIS LAND PARTNERS I, LP
AND CANYON FALLS LAND PARTNERS, LP

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re<br><br>McGinnis Land Partners I, LP. and<br>Canyon Falls Land Partners, LP<br><br>Debtors. | Chapter 11<br><br>Case No. 10-BK-24654-SGJ<br>Case No. 10-BK-24655-SGJ |

**DEBTORS' MOTION FOR AUTHORITY TO INCUR ADMINISTRATIVE DEBT
OUTSIDE THE ORDINARY COURSE OF BUSINESS
<u>PURSUANT TO 11 U.S.C. § 364(b)</u>**

McGinnis Land Partners I, LP and Canyon Falls Land Partners, LP, the debtors and debtors in possession in the above-captioned cases ("<u>McGinnis</u>", "<u>Canyon Falls</u>" and collectively, the "<u>Debtors</u>"), by and through their undersigned counsel, hereby submit this motion (the "<u>Motion</u>"), pursuant to section 364(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), for entry of an order authorizing the Debtors to incur administrative debt outside the ordinary course of business. In support of this Motion, the Debtors respectfully represent as follows:

# I.
# JURISDICTION

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are Section 364(b) of the Bankruptcy Code.

# II.
# BACKGROUND

**A.  Introduction**

4. On July 2, 2010 (the "Petition Date"), both of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the Bankruptcy Code.

5. The Debtors continue in possession of their properties and continue to operate and manage their business as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6. No request has been made for the appointment of a trustee or examiner, and a Committee of Creditors has not been appointed.

**B.  Factual Background**

7. The Debtors are each limited partnerships formed under the laws of the State of Texas on March 20, 2005. Canyon Falls GP, LLC is the General Partner of both McGinnis and Canyon Falls. HCREA Canyon Falls, L.P. ("HCREA Canyon Falls") is the Class A Limited Partner of each of the Debtors with a 50% partnership interest in each Debtor. SSM Investors, L.P. ("SSM") is the Class B Limited Partner of each of the Debtors with a 49.9% partnership

interest in each Debtor. II Stephens/Canyon Falls, LLC is the Class C Limited Partner of Canyon Falls with a .1% partnership interest. II Stephens/Falls Construction, LLC is the Class C Limited Partner of McGinnis with a .1% partnership interest.

8. Originally, the Debtors owned two contiguous tracts of vacant land consisting collectively of approximately 1,245 acres in Denton County, Texas in the Towns of Flower Mound, Northlake and Argyle (the "Property"). The Property is planned to be developed for both residential and commercial use and is more commonly known in the real estate development community as the "The Canyon Falls Development."

9. The Canyon Falls Development is a master planned community that has frontage along I-35W, Hwy 1171, Hwy 377 and access to FM 407. There are approximately 1,941 single family residences planned with an additional 100 acres of mixed use property that allows for a variety of commercial, retail, office and other uses. The Canyon Falls Development is divided by a 135 acre green belt that is a section of the Graham Branch Tributary located at the northern edge of Lake Grapevine. The green belt will be the centralized amenity of the development with miles of hiking and biking trails, multiple lakes and parks.

10. The architecture within The Canyon Falls Development will consist of a french country combined with an old european design. Hardscape construction will implement a wide variety of natural stones and rock formations. The main entry located at the southern end of The Canyon Falls Development at Hwy 1171 will include a $1,200,000 entry feature. The entry feature will include a large waterfall that feeds a small lake and a stream bed that will continue under the main parkway and terminate down in the green belt. The main parkway will continue along the green belt through large groves of oak trees that leads to the 23 lot model home park that sits above a large lake with two 25 foot fountains. The model home park is

3

located directly across the street from a 10 acre amenity center that will include two large pools, a club house, playground and athletic courts. Throughout the entire Canyon Falls Development will be miles of hiking and biking trails that will give pedestrian access back to the amenity center and throughout the 135 acre green belt.

11. The Debtors' acquisition and initial development of the Property was financed through two separate loans with American Bank of Texas, secured by the Property. On June 16, 2010, American Bank of Texas sold, for the full face amount, and assigned all of its rights, title and interest in the two loans to SLF IV/Hanover Canyon Falls, L.P., (the "Secured Lender")[1]. The Secured Lender holds liens against the Property securing an aggregate debt obligation of approximately $19.38 Million (the "Secured Lender Debt")[2]. As of the Petition Date, the Secured Lender Debt was all due and payable.

12. On September 29, 2010, the Debtors intend to commence monthly interest payments to the Secured Lender, in the approximate amount of $62,757 (on the Canyon Falls obligation) and $5,189 (on the McGinnis obligation), for an aggregate of $67,946. As more fully explained below (Section II.G.), the Debtors hereby file this Motion to borrow funds, on an unsecured basis, to fund the monthly interest payments to the Secured Lender, as well as having available funding for administrative obligations. The proposed borrowing, in the amount of $360,000, is sufficient to cover interest payments to the Secured Lender, through December 31, 2010.

---

[1] The Debtors understand and believe that SLF IV/Hanover Canyon Falls, L.P., acquired the interests of American Bank of Texas on June 16, 2010 (just 16 days prior to the Petition Date) by paying to American Bank of Texas, the full par amount, plus accrued and unpaid interest due and owing by the Debtors on the underlying notes, secured by the Property.

[2] Nothing herein should be deemed or constructed to be the Debtors' acknowledgement that the alleged liens of the Secured Lender against the Property are valid and/or properly perfected. The Debtors take no position herein with respect to such issues. The question of the validity and extent of the alleged liens are the subject of an on going investigation by the Debtors and their counsel.

13. Further, the Debtors anticipate the closing of the TxDOT Transaction and the Denton Easement Transaction (each as defined and addressed below – Section II.E.), in the next 45 days, and from which the net proceeds thereof will be paid to the Secured Lender, and applied against the Secured Lender Debt.

14. In July 2009, the Debtors obtained a collective appraisal of their entire property owned at the time, which resulted in an estimated value of $33.64 Million. As noted below (Section II.C.), since the July 2009 appraisal, the Debtors have sold a portion of their land. Also as noted below (Section II.D), the Debtors have commissioned a new appraisal of the Property, and expect to have the same in September 2010.

C. **Prepetition Sale Transactions**

15. Prior to the Petition Date, the Debtors sold to Argyle Independent School District ("AISD") a certain parcel of land containing approximately 108 acres (the "AISD Sold Property") for $8,124,675 (the "AISD Purchase Price"). $6,153,538.99 of the AISD Purchase Price (the "AISD Escrowed Funds") was established to fund an escrow with American Bank of Texas (the "Escrow Agent") pursuant to an Improvement and Escrow Agreement dated November 17, 2009, among Canyon Falls, AISD and the Escrow Agent (the "Escrow Agreement").

16. Also prior to the Petition Date, the Debtors sold a portion of the Property to Denton County, Texas ("Denton") containing approximately 5 acres (the "Denton Sold Property," which together with the AISD Sold Property are collectively referred to as the "Sold Property"). Denton funded an escrow in the amount of $490,699 (the "Denton Escrowed Funds," which together with the AISD Escrowed Funds are collectively referred to as the "Escrowed Funds") with the Escrow Agent pursuant to an Improvement and Escrow Agreement

5

dated March 25, 2010 among Canyon Falls, Denton and the Escrow Agent (the "Denton Escrow Agreement," which together with the AISD Escrow Agreement are collectively referred to as the "Escrow Agreements").

17. Pursuant to the Escrow Agreements, Canyon Falls agreed to make certain improvements to the Sold Property as identified in the Escrow Agreements using the Escrowed Funds in accordance with an agreed-upon budget (the "Budget"). The Budget is the maximum amount of money Canyon Falls is obligated to spend on the improvements and Canyon Falls is entitled to receive any remaining AISD Escrowed Funds after all improvements are made. The Debtors are hopeful that the costs and expenses relating to the improvements will be less than the AISD Escrowed Funds and thus the Debtors will receive the net remaining funds. While clearly not a certainty, the Debtors estimate that such amount could exceed $250,000, which amount is free and clear (not subject to the liens of the Secured Lender). Denton is entitled to receive any funds remaining from the Denton Escrowed Funds after all improvements are made.

18. Canyon Falls contracted with SSM[3] to supervise and manage the planning, design and construction of the improvements[4]. More specifically, the engineering plans and specifications for the improvements have been completed (the "Improvement Plans").

19. SSM and the Debtors circulated the Improvement Plans to various contractors, and established a bid deadline of August 16, 2010. The bids sought in connection with the Improvement Plans include seeking contractors for: (i) excavation, (ii) sanitary sewer lines, (iii)

---

[3] SSM is the Class B Limited Partner of each of the Debtors.

[4] The agreements by and between Canyon Falls and SSM are executory contracts. This Motion addresses executory contracts in Section IV.C., below.

water lines, (iv) drainage lines, (v) paving of roads and easements, (vi) erosion control, and (vii) landscaping.

20. SSM and the Debtors' project engineer have and continue to reviewed approximately 13 separate bids received in connection with the Improvement Plans, and anticipate awarding, in the next 30 days, subject to Bankruptcy Court approval, various contracts to implement the Improvement Plans.

21. The Debtors anticipate construction pursuant to the Improvement Plans to commence early October 2010, and have an expected completion date of June 2011.

D. **Existing Orders of the Court and Other Relief Requested**

22. Filed concurrently herewith is the Debtors' Application to employ John Blackburn and Lane Bennett Partners, as Real Estate Broker to assist the Debtors in marketing the Property (the "Real Estate Broker"). The procedures, timelines and structures proposed in this Motion have been discussed with and are supported by the Real Estate Broker as being reasonable and designed to be in the best interests of the Debtors' estates' and their stakeholders.

23. Filed concurrently herewith is the Debtors' Application to employ Steve Kaplan and Steve Kaplan, PC, as the Debtors' special real estate counsel, to assist in, *inter alia*, the transactions addressed in this Motion (the "Real Estate Counsel").

24. On August 4, 2010, the Court entered its Order Approving and Authorizing the Debtors' employment of Cole, Schotz, Meisel, Forman & Leonard, P.A., as counsel to the Debtors (the "Bankruptcy Counsel").

7

25. On August 13, 2010, the Court entered its Order Approving and Authorizing the Debtors' employment of the Butler Berger Group, as Real Estate Appraiser for the Debtors (the "Real Estate Appraiser").

26. In connection with the Debtors' proposed marketing of the Remaining Property (as defined and addressed below – Section II.F.) and the sale procedures, timelines, and structures, all as more fully discussed below, the Debtors have consulted with and utilized the advice and guidance, of the Real Estate Broker, the Real Estate Appraiser, the Bankruptcy Counsel, and the Real Estate Counsel (collectively, the "Debtors' Professionals").

E. **Pending Post-Petition Sale Transactions**

27. Filed concurrently herewith is the Debtors' Motion to grant an easement to a portion of the Property to Denton for approximately $306,000 (the "Denton Easement Transaction"). As noted in such motion, the easement is to be granted to Denton for use in connection with the Graham Branch Regional Sanitary Sewer System that will provide service to, *inter alia*, the Debtors' Property. The Debtors anticipate that the closing of the Denton Easement Transaction could occur within 45 days hereof.

28. The Debtors anticipate filing in the very near future a Motion to sell approximately 2.3 acres of the Property to the Texas Department of Transportation ("TxDOT") (the "TxDOT Transaction"). The acreage proposed to be sold to TxDOT is for right of ways to augment roadways in, around and contiguous to the Property. The Debtors anticipate that the closing of the TxDOT Transaction could occur within 45 days hereof.

29. In connection with the TxDOT Transaction and the Denton Easement Transaction, the Debtors propose that the net proceeds to be received by the Debtors will be paid to the Secured Lender, concurrent with the closing of such transaction.

### F. Proposed Sale of Remaining Property

30. The Debtors have determined that a sale of the Property, less (i) the Sold Property (as addressed in Section II.C.), (ii) the acreage in connection with the TxDOT Transaction, and (iii) the easement to be granted pursuant to the Denton Easement Transaction (hereinafter, the "Remaining Property") is in the bests interests of the Debtors and their stakeholders. The Debtors' believe that a significant amount of equity, over and above the amount of the Secured Lender Debt, exists in the Remaining Property. Such equity is best maximized, preserved and realized by a sale of the Remaining Property, as shown in the Debtors' motion to sell all Remaining Property filed concurrently herewith.

### G. Proposed Postpetition Borrowing

31. By this Motion, the Debtors seek authority to borrow funds, on an unsecured basis, and incur administrative debt from Highland Crusader Offshore Partners, L.P. (the "Postpetition Lender"), to fund the monthly interest payments to the Secured Lender, as well as to have available funding for administrative obligations. The Postpetition Lender is an affiliate of HCREA Canyon Falls (the Class A Limited Partner of each of the Debtors with a 50% partnership interest in each Debtor). The proposed borrowing, in the amount of $360,000, contemplates an unsecured loan with joint and several liability between the Debtors and is evidenced by the Promissory Note attached hereto as Exhibit A (the "Postpetition Borrowing"), and is sufficient to cover interest payments to the Secured Lender, through December 31, 2010, and is calculated as follows:

9

48467/0001-6957922v4

|  | **Canyon Falls Land Partners, LP** | **McGinnis Land Partners I, LP** | **Total** |
|---|---|---|---|
| **Loan Balance per Schedules** | $17,719,519 | $1,660,481 | $19,380,000 |
| **Pre-Petition Interest Rate** | Prime + 100 bps | Prime + 50 bps |  |
| **Monthly Interest Payment** | $62,757 | $5,189 | $67,946 |
| **September 2010 – December 2010 Payments** | $251,027 | $20,756 | $271,783 |
| **Cash Balance** | $12,757 | $901 | $13,658 |
| **Cash Shortfall** |  |  | $258,125 |
| **Additional Funding** |  |  | $100,000 |
| **Total Borrowing** |  |  | **$358,125** |

32. The Postpetition Borrowing provides for an unsecured loan at an annual interest rate of 20%. The Debtors are <u>not</u> seeking to prime the liens of the Secured Lender nor are the Debtors seeking to incur the Postpetition Borrowing as an administrative expense with priority over all other administrative expenses. In fact, the Postpetition Lender has agreed that the administrative expense incurred for the Postpetition Borrowing shall only be paid after all other administrative expenses are paid in full.

### III.
### GROUNDS FOR APPROVAL OF THE MOTION

33. By this Motion and pursuant to 11 U.S.C. § 364(b), the Debtors seek this Court's authorization to incur administrative debt outside the ordinary course of business, i.e., the Postpetition Borrowing, from the Postpetition Lender.

34. Pursuant to Section 364(b) of the Bankruptcy Code, "[t]he Court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an

10

administrative expense." 11 U.S.C. § 364(b). Allowable administrative expenses under Section 503(b)(1) include "the actual, necessary expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1). Section 364(b) of the Bankruptcy Code grants the court broad discretion to allow a debtor to obtain credit out of the ordinary course of business and treat such credit as an allowable expense. *In re Payless Cashways, Inc.*, 268 B.R. 543, 546 (Bankr. W.D. Mo. 2001).

35. The Debtors have determined that obtaining the Postpetition Borrowing requested herein from the Postpetition Lender is necessary for the Debtors to operate their businesses in chapter 11. Because the Debtors' existing cash on hand is not sufficient to fund the monthly interest payments to the Secured Lender, as well as have available funding for administrative obligations, the Debtors' concluded a commitment for the Postpetition Borrowing from the Postpetition Lender is necessary and in the best interests of the estates and their creditors.

36. The Postpetition Borrowing from the Postpetition Lender has been negotiated in good faith and at arm's length. The Postpetition Borrowing provides for an unsecured loan at an annual interest rate of 20%. The Debtors are <u>not</u> seeking to prime the liens of the Secured Lender nor are the Debtors seeking to incur the Postpetition Borrowing as an administrative expense with priority over all other administrative expenses. In fact, the Postpetition Lender have agreed that the administrative expense incurred for the Postpetition Borrowing shall only be paid after all other administrative expenses are paid in full. <u>See</u>, *In re Microvideo Learning Systems, Inc.*, 232 B.R. 602, 609-610 (Bankr. S.D.N.Y. 1999), aff'd, 254 B.R. 90 (S.D.N.Y. 1999), aff'd, 227 F.3d 474 (2d Cir. 2000) ("the general rule is that all administrative expense creditors must be treated with absolute equality unless a creditor agrees to subordinate its

11

claims or unless the Code specifically provides otherwise.") (quoting *In re MS Freight Distribution, Inc.*, 172 B.R. 976, 980 (Bankr. W.D. Wash. 1994)).

37. The Debtors believe that the terms of the Postpetition Borrowing are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with the Debtors' fiduciary duties, and are supported by reasonably equivalent consideration.

## IV.
## NOTICE

38. Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Northern District of Texas; (ii) counsel to the Secured Lender; (iii) all parties with executory contracts for the Remaining Property; (iv) all parties entitled to receive notices in these chapter 11 case pursuant to Bankruptcy Rule 2002; (v) various federal and state taxing authorities, including the Internal Revenue Service; and (vi) all other parties who have expressed a bona fide interest in purchasing the Remaining Property. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

39. No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Debtors respectfully requests that the Court, after notice and hearing as may be required, (a) enter an Order or authorizing the Debtors to incur administrative debt outside the ordinary course of business from the Postpetition Lender; and (b) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: August 27, 2010

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: /s/ Michael D. Warner
Michael D. Warner (TX Bar No. 792304)
Rachel R. Obaldo (TX Bar No. 24041617)
301 Commerce Street, Suite 1700
Fort Worth, TX 76102
(817) 810-5250
(817) 810-5255 (Fax)

Counsel for the Debtors
and Debtors in Possession

13

48467/0001-6957922v4

# EXHIBIT A

# PROMISSORY NOTE

$360,000.00 _____, 2010

      FOR VALUE RECEIVED, MCGINNIS LAND PARTNERS I, LP and CANYON FALLS LAND PARTNERS, LP ("***Makers***") jointly and severally promise to pay to the order of HIGHLAND CRUSADER OFFSHORE PARTNERS, L.P. ("***Payee***"), in legal and lawful tender of the United States of America, the principal sum of THREE HUNDRED SIXTY THOUSAND and 00/100 Dollars ($360,000.00), together with interest, on the terms set forth below (the "***Note***"). All sums hereunder are payable to Payee at 13455 Noel Road, Suite 800, Dallas, TX 75240, or such other address as Payee may specify to Makers in writing from time to time.

      1.    <u>Interest Rate</u>. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to twenty percent (20%) per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on the maturity of this Note.

      2.    <u>Payment of Principal and Interest</u>. The accrued interest and principal of this Note shall be due and payable upon the earlier of (i) one year from the date of the Note; (ii) confirmation of a plan of reorganization with respect to the Makers; or (iii) dismissal of the pending bankruptcy cases of the Makers.

      3.    <u>Prepayment Allowed; Renegotiation Discretionary</u>. Makers may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

      4.    <u>Acceleration Upon Default</u>. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

      5.    <u>Waiver</u>. Makers hereby waive grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

      6.    <u>Attorneys' Fees</u>. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Makers shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7. Limitation on Agreements.  All agreements between Makers and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.  The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Makers in conflict herewith.

8. Governing Law.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKERS:**

MCGINNIS LAND PARTNERS I, LP

By: Canyon Falls Land GP, LLC, its general partner

By:_____
Name:
Title:

CANYON FALLS LAND PARTNERS, LP

By: Canyon Falls GP, LLC, its general partner

By:_____
Name:
Title: